IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
2:10CV10-03-MU

| | |
|---|---|
| MARVIN DALE HARRIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     **O R D E R** |
| | ) |
| DAVID MITCHELL, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

**THIS MATTER** comes before the Court upon Petitioner's Petition for Writ of Habeas

Corpus Under 28 U.S.C. § 2254 filed April 6, 2010 (Doc. No. 1); Respondent's Response and

Motion for Summary Judgment filed April 14, 2010 (Doc. Nos. 5, 6and 7); and Petitioner's

Opposition filed April 22, 2010 (Doc. No. 13.)  This matter is also before the Court on

Petitioner's "Motion to Subpoena For Taking Deposition and to Appear as Petitioner's Witness

at any Hearing Forth Coming in the Matters at Bar" filed April 20, 2010 (Doc. No. 11) and the

Government's response in opposition filed April 22, 2010 (Doc. No. 12.)

## I. PROCEDURAL BACKGROUND

On December 6, 2007, Petitioner was convicted, after trial by jury, of assault with a

deadly weapon inflicting serious injury.  Petitioner was sentenced to 34 - 50 months

imprisonment.

Petitioner appealed and on January 6, 2009, the North Carolina Court of Appeals issued

an unpublished opinion finding no error. On January 7, 2010, Petitioner filed a petition for

discretionary review (PDR) in the Supreme Court of North Carolina, seeking review of the Court

of Appeals' opinion on direct appeal, which was denied on January 28, 2010.

On February 2, 2009, Petitioner filed his first Motion for Appropriate (MAR) relief which was summarily denied on July 28, 2009. On January 25, 2010, Petitioner filed a certiorari petition in the North Carolina Court of Appeals seeking review of Judge Downs' July 28, 2009 Order denying the MAR. Certiorari was denied on February 8, 2010. On March 3, 2010, Petitioner filed a second MAR, which was summarily denied on March 5, 2010. On March 11, 2010, Petitioner filed a certiorari petition in the North Carolina Court of Appeals seeking review of Judge Downs' denial of his second MAR. Certiorari was denied on March 23, 2010.

Petitioner filed the instant habeas petition in this Court on April 6, 2010. Petitioner contends that: (1) the trial court erred by holding the charge conference without him being present in violation of his constitutional rights; (2) the trial court committed plain error by failing to instruct the jury on the elements of self-defense in violation of his constitutional rights; (3) there was insufficient evidence to support his conviction; (4) he received ineffective assistance of counsel; (5) the trial court erred by expressing opinion when instructing the jury as to Petitioner's charge; (6) the trial court erred by allowing the presence of biased jurors violating his constitutional rights; (7) prosecutorial misconduct occurred violating his constitutional rights; and (8) newly discovered evidence was withheld by the state prosecutors in violation of his constitutional rights.

## II. DISCOVERY MOTION

Petitioner asks that this Court direct that Samantha Harris appear and give her deposition as to her first-hand knowledge of all the grounds raised in Petitioner's Petition. As support of his request, Petitioner contends that Ms. Harris' statement could have served as a vehicle for a dismissal at trial had his attorney used her as he requested. He further claims that her statement

now "can and will back Petitioner's arguments as to violations of his rights to the U.S. Constitution. Therefore proving that it was and is more than just my words against the A.G.'s." (Motion at 2.)

Generally, habeas petitioners have no right to automatic discovery. Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001). Pursuant to Habeas Rule 6(a) a prisoner must seek leave of court and demonstrate good cause before he is entitled to any form of discovery in a federal habeas corpus proceeding. Discovery is extremely limited in such proceedings. See Bracy v. Gramley, 520 U.S. 899 (1997). Rule 6 allows discovery in a habeas proceeding only "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Id. at 908-90 (1997) The burden of demonstrating the materiality of the information is on the moving party, Stanford, 266 F.3d at 460, and Rule 6 does not "sanction fishing expeditions based on conclusory allegations. Williams v. Bagley, 380 F.3d 932 (6th Cir. 2004).

In the instant motion, Petitioner has not demonstrated the materiality of the information requested nor has he demonstrated "good cause" to entitle him to the discovery he seeks. Indeed, the Court notes that Petitioner concedes that he has made this same motion in "prior courts" and "none have granted his request." Petitioner's motion is DENIED.

### III. STANDARD OF REVIEW

_____Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication; (1) "resulted in a

> decision that was contrary to, or involved as unreasonable application of, clearly established Federal laws, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

Id. (Internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

Finally, the applicable standard of review is to be applied to "all claims 'adjudicated on the merits," that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.2d 445, 455 (4th Cir. 1999).

## IV. ANALYSIS

### A.     Charge Conference

Petitioner argues that the trial court erred in holding the charge conference without him being present. Petitioner raised this substance of this claim on direct appeal and the North Carolina Court of Appeals denied the claim on the merits as follows:

Defendant assigns this error pursuant to the Confrontation Clause in Article I, Section 23 of the North Carolina Constitution, which "guarantees an accused the right to be present in person at every stage of his trial." State v. Payne, 320 N.C. 138, 139, 357 S.E.2d 612, 612 (1987). Defendant relies on cases holding that capital defendants may not waive their right to be present in person at every stage of their trial. See id. (Granting new trial because trial court admonished jury outside presence of court reporter, counsel, and defendant charged with rape and murder); See also State v. Golphin, 352 N.C. 364, 533 S.E.2d 168 (2000), cert. denied, 532 U.S. 931, 121 S. Ct 1379, 149 L. Ed. 2d 305 (2001) (concluding trial court committed no error in conducting pretrial venue and venire hearings in presence of defense counsel, but outside presence of capital defendants).

In noncapital felony trial, however, the right to be present may be waived by a defendant. See State v. Skipper, 146 N.C. App. 532, 535, 553 S.E.2d 690, 692 (2001). The voluntary and unexplained absence of a defendant from court after the beginning of trial constitutes such a waiver. See id. Furthermore, our Supreme Court has held that where a defendant's absence from a jury charge conference is voluntary and unexplained, any error of proceeding in defendant's absence is harmless if defense counsel is present and does not object to proceeding in his client's absence. See State v. Wise, 326 N.C. 421, 433, 390 S.E. 2d 142, 148-50 (1990)

Here, defendant had notice of the charge conference but didn't appear when the conference was scheduled. Defendant was not excluded from the conference, and his counsel was present. Defense counsel did not object to beginning the jury charge conference in defendant's absence. Moreover, defense counsel participated actively during the conference. Accordingly, we hold there was no error in the trial court's conducting the jury charge conference in defendant's absence.

(See Ex. 1 to State's Motion for Summary Judgment.) This adjudication on the merits is correct.[1] The adjudication is not contrary to, nor an unreasonable application of, the relevant Supreme Court law, i.e. Rushen v. Spain, 464 U.S. 114, 119 n.2 (1983) (right to presence at all critical stages of trial subject to harmless error analysis.) Furthermore, it is not based upon an unreasonable determination of the facts in light of the evidence presented in state court.

---

[1] Specifically, the North Carolina Court of Appeals finding of waiver and harmlessness is correct and consistent with federal constitutional requirements. See Rushen v. Spain, 464 U.S. 114, 119 n.2 (1983).

Therefore, Petitioner's claim that the trial court erred by holding the charge conference in his absence is denied pursuant to § 2254(d) and (e).  See <u>Bell v. Cone</u>, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands theat state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), <u>Yarborough v. Alvorada</u>, 541 U.S. 652 (2004) and <u>Early v. Packer</u>, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review).

**B.      Self Defense**

Petitioner argues that the trial court committed plain error by failing to instruct the jury on the elements of self-defense in violation of his constitutional rights.  Petitioner is not entitled to any relief on this claim because it is not cognizable on federal habeas review.[2]  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  "Because a state trial court's evidentiary rulings and jury instructions turn on state law, these matters are usually beyond the scope of federal habeas review."  <u>Perruquet v. Briley</u>, 390 F.3d 505, 511 (7th Cir. 2004).  Thus, a federal habeas court's review of allegedly erroneous jury instructions is limited to assessing whether the instruction "so infected the entire trial that the resulting conviction violates due process."  <u>Estelle</u>, 502 U.S. at 67-68; <u>Henderson v. Kibbe</u>, 431 U.S. 145 (1977) (providing that state court jury instruction must render entire trial fundamentally unfair to warrant federal habeas relief); <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973) (same); <u>Lewis v. Jeffers</u>, 497 U.S.

---

[2] The Court recognizes that a defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial.  However, here, Petitioner, beyond citing to the Fourteenth Amendment, does not establish how the trial court's failure to give the self -defense instruction was so grave as to have deprived him of that right.

764, 780 (to the extent a federal court may grant a writ based on jury instructions, it may only do

so in extraordinary cases). As outlined in the North Carolina Court of Appeals decision, there

was strong evidence indicating that Petitioner did not act in self-defense. The North Carolina

Court of Appeals denied the claim on the merits as follows;

> Defendant next argues that the trial court erred by not instructing the jury on self-defense. Defendant did not request a jury instruction on self defense but, citing State v. Anderson, 40 N.C. App. 318, 253 S.E.2d 48 (1979), defendant argues that he was nevertheless entitled to one. We disagree.
>
> In Anderson, the Court stated that a trial court must "instruct the jury on the issue of self-defense when that question is raised by the evidence, even in the absence of a request to do so." See id. at 321, 253 S.E. 2d at 50. Thus, when a defendant's evidence raises the issue, the trial court must instruct the jury on self-defense even if the State shows there is contradictory evidence or discrepancies in the defendant's evidence. See id.
>
> The right of self-defense is only available, however, to a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and give notice to his adversary that he has done so. State v. Allred, 129 N.C. App. 232, 235, 498 S.E.2d 204, 206 (1988) (citations omitted); See also State v. Owen 111 N.C. App. 300, 307, 432 S.E.2d 378, 383 (1993). When a person is confronted with a nonfelonious assault, he must retreat "if there is any way of escape open to him," rather than escalate the incident through the use of a weapon. See Allred, 129 N.C.App. at 235, 498 S.E. 2d at 206.
>
> Here, defendant was neither without fault nor did he abandon the fight, withdraw from it, or give notice to his adversaries that he would do so. Rather, defendant aggressively and willingly entered the fight. Defendant approached the parked vehicle and verbally confronted the passengers. Defendant struck the first blow, punching Chekell through the open car window. Defendant backed away from the car in order to continue fighting outside. According to defendant, all the passengers exited the vehicles and stood around defendant, but none attacked or threatened him. According to defendant, he told his dogs, "watch'em," and told the passengers three times to "back up and get in the car," but defendant himself did not attempt to leave. Although defendant could have abandoned the confrontation or retreated once the passengers exited the vehicles, defendant did not. He remained in the parking lot to fight, and escalated the confrontation by using his dog as a weapon.

> On defendant's evidence alone, defendant was the initial aggressor in the conflict and he did not attempt to communicate his desire to withdraw. Therefore, the trial court correctly did not instruct the jury on self defense.

(See Ex. 1 to State's Motion for Summary Judgment.) Petitioner has not established that the Court's failure to give a self-defense instruction was fundamentally unfair. Therefore, Petitioner's claim is not cognizable on federal habeas review.[3]

## C. Sufficiency of the Evidence

Next, Petitioner argues that there was insufficient evidence to support his conviction. The standard of review on federal habeas corpus of a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See Wright v. West, 505 U.S. 277 (1992); Jackson v. Virginia, 443 U.S. 307 (1979). Furthermore, the Supreme Court has held that any claim of insufficient evidence is necessarily a federal due process claim. See Jackson v. Virginia, 443 U.S. at 321; In re Winship, 397 U.S. 358 (1970). See also West v. Wright, 931 F.2d 262, 266 (4th Cir. 1991) (any challenge to sufficiency of evidence is necessarily due process challenge), overruled on other grounds, 505 U.S. 277 (1979).

---

[3] To the extent that this Court is incorrect in its conclusion that this claim is not cognizable on federal habeas review, Petitioner raised this issue on direct appeal and the state court adjudication on the merits of this claim is correct and is not contrary to, nor an unreasonable application of, the relevant Supreme Court law, i.e. Lewis v. Jeffers, Cupp v. Naughten, and Henderson v. Kibbe. Furthermore, it is not based upon an unreasonable determination of the facts in light of the evidence presented in state court. Therefore, Petitioner's claim that the trial court committed error by failing to instruct on the elements of self-defense is alternatively denied pursuant to § 2254(d) and (e). See Bell v. Cone, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands theat state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), Yarborough v. Alvorada, 541 U.S. 652 (2004) and Early v. Packer, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review).

It is well established that in reviewing a insufficiency of the evidence claim, courts must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982); see also States v. Fritsch, 351 N.C. 373, 379 ("Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." (quotation marks and citation omitted)), cert. denied, 531 U.S. 890 (2000).

The evidence presented at Petitioner's trial, some of which was recited by the North Carolina Court of Appeals in its opinion on direct appeal, See North Carolina v. Harris, No. COA08-641, 2009 N.C. App. LEXIS 23 (Ex. 1 to State's Motion for Summary Judgment), was more than sufficient to support Petitioner's conviction. Accordingly, Petitioner's insufficiency of the evidence claim is without merit and therefore denied.

Moreover, Petitioner raised the substance of this claim in his MAR, which was denied by the North Carolina Court of Appeals as follows:

> Finally, defendant argues that the trial court erred in denying his motion to dismiss for insufficiency of the evidence. A defendant's motion to dismiss is properly denied when the State has shown "substantial evidence (1) of each essential element of the offense and (2) of the defendant's being the perpetrator." State v. Boyd, 177 N.C. App. 165, 175, 628 S.E. 2d 796, 804 (2006). The State bears the burden of showing "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E. 2d 164, 169 (1980). In ruling on a motion to dismiss, the trial court must consider the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose, 339 N.C. 172, 192, 451 S.E. 2d 211, 223 (1994).
>
> In order to convict a defendant of assault with a deadly weapon inflicting serious injury under N.C.G.S. § 14-32(b), the State must show: (1) an assault; (2) with a deadly weapon; (3) inflicting serious injury; (4) not resulting in death. See State v. Aytche, 98 N.C. App. 358, 366, 391 S.E. 2d 43, 47 (1990). Defendant contends the State failed to meet the evidentiary standard required for the "deadly

weapon" element of the charge. A deadly weapon is any article, instrument or substance which is likely to produce death or great bodily harm." State v. Sturdivant, 304 N.C. 293, 301, 283 S.E. 2d 719, 725 (1981). With the exception of firearms, any article, instrument or substance may be a deadly weapon in light of "the nature of the instrument, the manner which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use." State v. Cook, 164 N.C. App. 139, 142, 594 S.E. 2d 819-821-22 (2004). We have previously held that under certain circumstances a dog may constitute such an instrument. See id.

In the case at bar, the State submitted substantial evidence that defendant used his dogs as a deadly weapon. Defendant unleashed his dogs, and when they approached the passengers, the passengers yelled to each other to get back into the vehicles. The passengers knew the dogs were pit bull dogs and by returning to the cars demonstrated that they wanted to avoid the dogs. When defendant approached the passengers who were still in the vehicles, defendant manifested his aggression verbally and then physically by punching Chekelee in the face through one vehicle's open window. After defendant punched Chekelee, some passengers exited the vehicles but then returned to the vehicles to avoid the dogs after one of them began attacking Chekelee. Defendant conceded that he never put his dogs back on a leash and that the passengers were defenseless. The State offered evidence to show that defendant "sicced" his dogs on the passengers, all of whom related essentially identical accounts of the incident. One of defendant's dogs bit Chekelee, lacerating his lip, nose and left eye. The dog bite resulted in bleeding and swelling, requiring stitches and pain medication. Chekelee's injuries took about a month to heal.

Viewing this evidence in the light most favorable to the State, there was substantial evidence presented as to the nature of the dogs, and defendant's use of them for a reasonable mind to conclude that defendant used his dogs as a deadly weapon. Therefore, the trial court did not err in denying defendant's motion to dismiss.

(See Ex. 1 to State's Motion for Summary Judgment.) The state court adjudication is correct and

it did not result in a decision contrary to, or involve an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States, i.e. Jackson

and Wright. Nor is the state court adjudication based on an unreasonable determination of facts

in light of the evidence presented in the state court proceedings. Therefore, the state court's

adjudication will not be overturned under the deferential standards of review contained in section

2254(d) and (e).  See Bell v. Cone, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), Yarborough v. Alvorada, 541 U.S. 652 (2004) and Early v. Packer, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review).

### D.    Ineffective Assistance of Trial Counsel

Petitioner contends he received ineffective assistance of counsel for many reasons. Indeed, he sets forth numerous one or two sentence allegations challenging virtually every aspect of counsel's representation. (See Complaint, Ground 4.)

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby.  Strickland v. Washington, 466 U.S. 687-91 (1984).  In order to satisfy the performance prong, the Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  Id. at 689; see also Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).  The prejudice prong is satisfied by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31.  If the petitioner fails to meet this burden, a

reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing

Strickland, 466 U.S. at 697.   Furthermore, in considering the prejudice prong of the analysis,

the Court must not grant relief solely because the petitioner can show that, but for counsel's

performance, the outcome would have been different.  Sexton v. French, 163 F.3d 874, 882 (4th

Cir. 1998), cert. denied, 528 U.S. 855 (1999).  Rather, the Court "can only grant relief under . . .

Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting

Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993).

Here, Petitioner's one to two sentence ineffective assistance of counsel claims are

conclusory and may be denied pursuant to Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992)

("In order to obtain an evidentiary hearing on an ineffective assistance of counsel claim – or for

that matter, on any claim, – a habeas petitioner must come forward with some evidence that the

claim might have merit.  Unsupported, conclusory allegations do not entitle a habeas petitioner

to an evidentiary hearing.").  Further, Petitioner has not established either prong of the Strickland

test with respect to any of his conclusory claims.  Therefore, Petitioner's ineffective assistance of

counsel claims must be dismissed.

Moreover, Petitioner raised the substance of these claims in his first and/or second

MARs.  (See. Exs.6 and 13  – to State's Motion for Summary Judgment).  Judge Downs

summarily denied both of the MAR on the merits.  These summary adjudications on the merits

are correct.  The adjudications are not contrary to, nor an unreasonable application of, the

relevant Supreme Court law, i.e. Strickland.  Furthermore, they are not based upon an

unreasonable determination of the facts in light of the evidence presented in state court.

Therefore, Petitioner's ineffective assistance of counsel claims are denied pursuant to § 2254(d)

and (e). See Bell v. Cone, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly

deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), <u>Yarborough v. Alvorada</u>, 541 U.S. 652 (2004) and <u>Early v. Packer</u>, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review).   <u>See</u> <u>also</u> <u>Bell v. Jarvis</u>, 236 F.3d 149, 176 (4th Cir. 2000) (en banc) (dissenting opinion pointing out that both the majority of the en bank panel and the dissenters agree that a perfunctory state court order by a North Carolina Superior Court judge denying an MAR solely on the grounds that the MAR "fails to state a claim upon which relief can be granted", without any citation of authority, is an adjudication on the merits for purposes of 28 U.S.C. § 2254(d)(1)); <u>Weeks v. Angelone</u>, 176 F.3d 249, 259 (4th Cir. 1999) ("Where, as here, the state supreme court has adjudicated a claim on the merits but has given no indication of how it reached its decision, a federal habeas court must still apply the AEDPA standards of review. A state court's perfunctory decision is reasonable if it '"is at least minimally consistent with the facts and circumstances of the case"') (citations omitted); <u>Wright v. Angelone</u>, 151 F.3d 151, 157 (4th Cir. 1998) (Even where state court denies multiple claims in short, one-paragraph order without an evidentiary hearing, the state adjudication is still entitled to deferential standards of review in 2254(d).)[4]

**E.    Judge's Opinion**

Next, Petitioner contends that the trial court erred by expressing her own opinion when

---

[4] To the extent that the undersigned is incorrect in concluding that Judge Downs summarily denied Petitioner's ineffective assistance of counsel claims on their merits, the only other ground he could have denied them on would have been procedural bar as they were not raised on direct appeal.  If that is the case, such procedural bar would preclude federal habeas review.

instructing the jury as to Petitioner's charge.  In support of this allegation, Petitioner argues that

the trial judge erred in stating her opinion that pit bull dogs were a deadly weapon.  While, the

trial judge did make this statement, when the entire instruction for assault with a deadly weapon

inflicting serious injury is read as a whole, it is clear that the trial judge correctly instructed the

jurors that it was up to them to determine whether, under the circumstances of this case, the two

pit bull dogs were used as deadly weapons.  The instruction reads, in part, as follows:

> The defendant has been charged with assault with a deadly weapon inflicting
> serious injury.  To find the defendant guilty of this offense, the State must prove
> three things beyond a reasonable doubt.
> First, that the defendant assaulted the victim by intentionally and without
> justification or excuse caused two pit bulls to attack the victim by lacerating his
> face and mouth.
>
> Second, that the defendant used a deadly weapon, two pit dogs.  A deadly weapon
> is a weapon which is likely to cause death or serious bodily injury.  Two pit
> bulldogs are deadly weapons.  In determining whether two pit dogs, pit bulldogs
> are deadly weapons, you should consider the nature of two pit bulldogs, the
> manner in which they were used and the size and strength of the defendant as
> compared to the victim.  And
>
> Third, that the defendant inflicted serious injury upon the victim.
> If you find from the evidence beyond a reasonable doubt that on or about the
> alleged date, the defendant intentionally caused two pit bulldogs to attack the
> victim lacerating his face and mouth and that two pit bulldogs are deadly
> weapons, thereby inflicting serious injury upon the victim, nothing else
> appearing, it would be your duty to return a verdict of guilty. If you do not so find
> or have a reasonable doubt as to one or more of these things, it would be your
> duty to consider the lesser included offense of assault with a deadly weapon.

(Ex. 3 to the State's Motion for Summary Judgment; Transcript at 136-37.)  Reviewing this

instruction as a whole makes clear that Judge Bridges properly left the question to the jury to

determine whether the two pit bull dogs were used as deadly weapons under the circumstances

of this case.

   Further, when the court asked counsel, outside of the presence of the jury,  whether there

were any corrections or additions to the charge, Petitioner's counsel stated that the Court "stated first that two pit bulldogs are deadly weapons. That was clear to me to be unintentional and obviously, the Court did go on to indicate that it was that the Jury needed to decide whether or not they were deadly weapons. The distinction, I think, is pretty clear to us in looking at the Pattern the difference between a deadly weapon per se and an instrumentality which might or might not be but I would ask your Honor to instruct the Jury simply to be clear that the decision as to whether or not the two bulldogs were deadly weapons is their decision." (Transcript at 141, Ex. 3 to State's Motion for Summary Judgment.) The Court then brought the jury back into the courtroom and instructed them as follows: "Ladies and Gentlemen of the Jury, it was brought to my attention that I may not have made it clear to you that you are to decide whether two pit bulldogs are deadly weapons and that is entirely within your province to determine, okay? I wanted to clarify that that it is within your province to decide whether the dogs are deadly weapons. Thank you." (Id.) The Court then asked Petitioner's counsel if she sufficiently clarified the instruction and Petitioner's counsel stated "[i]t is and in light of that, we have no challenge to the instructions." (Id)

As previously stated in this Order, a federal habeas court's review of allegedly erroneous jury instructions is limited to assessing whether the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 67-68; Henderson v. Kibbe, 431 U.S. 145 (1977) (providing that state court jury instruction must render entire trial fundamentally unfair to warrant federal habeas relief). Here, it is clear after reviewing the entire jury instruction that Judge Bridges instruction regarding whether pit bulls were deadly weapons was not so egregious as to render Petitioner's entire trial fundamentally unfair. Further, the

court, at Petitioner's counsel's request,[5] gave a clarifying or curing instruction reiterating that it is up to the jury to decide whether the two pit bulldogs were deadly weapons. Therefore, Petitioner's claim is without merit.

## F. Biased Jurors

Next, Petitioner contends that the trial court erred by allowing the presence of biased jurors violating his constitutional rights. Petitioner does not limit his claim of bias to any one juror nor does he provides the names of any of the alleged biased jurors. Instead, he seems to contend that the entire jury was biased against him. He does give a few examples of jurors he believed were biased. He contends that one juror indicated that she had taught the victim and his siblings and that she knew the family well and would lean toward him and that others stated they were related to the victim and others claimed to know the victim on a personal basis. Finally another was related to a main witness for the State.[6] By the Court's count, Petitioner is challenging at least four and possibly more jurors, however, it does not appear, and Petitioner does not allege, that any were challenged for cause during jury selection. Instead, Petitioner argues that his counsel made a motion for a new jury[7] but that all the jurors were selected for the

---

[5] To the extent Petitioner's claim includes a claim of ineffective assistance of counsel for failing to object to the court's statement that pit bull dogs are deadly weapon, Petitioner cannot establish deficiency because his counsel asked the court to clarify its instruction that it is up to the jury to decide if the two pit bulldogs were a deadly weapon.

[6] A transcript of the juror voir dire was not part of the record in this case. Indeed, by North Carolina statute, jury selection is not transcribed in noncapital cases unless a party so requests that such proceedings be recorded. N.C. Gen Stat. § 15A-1241. However, the Court notes that it appears that Petitioner did not request that the proceedings be recorded.

[7] To the extent that Petitioner's claim can be construed to include a claim of ineffective assistance of counsel, his claim would fail as he cannot establish deficiency as, by his own admission, his attorney raised these facts as grounds to support his motion for a new jury.

jury despite his counsel's motion.[8]  Petitioner argues that in response to his attorney's motion for a new jury, the prosecutor stated that this is a small town and everyone knows everyone and that if we get rid of all jurors who know the victim, we will not have a jury.  Petitioner seems to take particular exception to the prosecutor's statement that everyone knows everyone, claiming that this is not true since none of the jurors knew him.  Petitioner argues this fact establishes that the prosecutor's statement is simply not true.  However, whether or not the prosecutor's statement is true is not relevant.

Petitioner's claim is conclusory in that he does not identify the names of the allegedly biased jurors or even how many jurors he contends were biased or in many respects specifically how or why each juror was biased.  In short, he does not provide the Court with any evidence that any jurors were biased.  Further, the record before this Court does not establish Petitioner's claim.  Indeed, Petitioner concedes that he does not have the evidence to prove his claim. (Complaint at 12.)

Next, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. Amend. VI.  The right to an impartial jury is applicable to the states via the Fourteenth Amendment.  See Irvin v. Dowd, 366 U.S. 717, 722 (1961).  The Supreme Court has held that due process requires "a jury capable and willing to decide the case solely on the evidence before it."  Smith v. Phillips, 455 U.S. 209, 217 (1982).  In cases alleging juror dishonesty during voir dire, the two-part test enunciated in McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548 (1984) is

---

[8] The State argued in its brief opposing Petitioner's certiorari petition that there is  no evidence in the record that any such motion was ever made at trial.  (Ex. 11 at 5 to State Motion for Summary Judgment.)

used in determining whether the defendant is entitled to a new trial. The Court notes that this is not a claim regarding juror dishonesty. To the extent that this claim is one of implied bias, the doctrine of implied bias set forth in Justice O"Conner's concurring opinion in <u>Smith v.Phillips</u>, 455 U.S.209 (1982) is limited to "exceptional" and "extraordinary" situations. Here, Petitioner's conclusory claim sets forth no allegations that are "exceptional" or "extraordinary." Further, Petitioner concedes that he does not have the evidence to prove his claim of juror bias. (Complaint at 12.) Therefore, Petitioner's conclusory claim[9] that the trial court erred by not selecting a new jury is denied.

Furthermore, Petitioner raised the substance of this claim in his first MAR and Judge Downs' summarily denied this MAR on its merits. Judge Downs' summary MAR order did not result in a decision contrary to, or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court i.e. <u>McDonough</u> or <u>Smith</u>. Nor was the summary MAR order based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. . Therefore, Petitioner's juror bias claim is also denied pursuant to § 2254(d) and (e). See <u>Bell v. Cone</u>, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands theat state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), <u>Yarborough v. Alvorada</u>, 541 U.S. 652 (2004) and <u>Early v. Packer</u>, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to

---

[9] See <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992.)

obtain deferential standards of review).[10]

**G.      Prosecutorial Misconduct**

Next, Petitioner contends that the prosecutor engaged in misconduct for a variety of reasons.  In order to establish prosecutorial misconduct, Petitioner must show (1) the government's conduct was improper; and (2) the conduct prejudicially affected substantial rights so as to deprive defendant of a fair trial.  See United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007).  The Supreme Court had held that in order to rise to the level of a due process violation, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial."  Greer v. Miller, 483 U.S. 756, 765 (1987).

To begin, Petitioner contends that the state failed to serve him with written notice of its intent to prove the existence of his prior record level.  Petitioner seems to be complaining about the fact that on direct examination, his lawyer asked him if he had a felony conviction for breaking and entering and Petitioner responded no and volunteered that it had been reduced to a misdemeanor before he pleaded guilty.  (See Ex. 3 to State's MSJ; Transcript at 109-112.)  The prosecutor then asked him about it again on cross-examination and again Petitioner answered no and volunteered that the charge "was pled down to a misdemeanor B & E.".  (Id. at 111.)  These questions on direct and cross-examination did not amount to the jury being told Petitioner was a "two time felon."  Nor did it amount to an attempt to prove his prior record level.  Petitioner has not established that the prosecutor engaged in prosecutorial misconduct and his claim is without merit.

---

[10]  To the extent that the undersigned is incorrect in concluding that Judge Downs summarily denied Petitioner's juror bias claim on their merits, the only other ground he could have denied it on would have been procedural bar as the claim was not raised on direct appeal. If that is the case, such procedural bar would preclude federal habeas review.

Next, Petitioner contends that the prosecutor prompted the victim to lie by suggesting to him during direct examination that Petitioner had threatened him.  (Id., Transcript at 13 - 14.) Petitioner argues that the victim would never have said he threatened him unless the prosecutor had prompted him to do so.  The Court has reviewed the transcript of Petitioner's trial and finds no improper questioning that was so egregious as to render Petitioner's entire trial fundamentally unfair.  Therefore, Petitioner's claim is without merit.

Next, Petitioner argues that the prosecutor had knowledge the victim's father committed perjury by testifying that he had not spoken with Petitioner about the assault on his son.  It appears that Petitioner is accusing the prosecutor of suborning perjury.  However, Petitioner's claim is conclusory in that he offers no evidence to support his claim.[11]  Therefore, Petitioner's claim is without merit.

Next, Petitioner argues that the prosecutor engaged in misconduct for failing to disclose the fact that there was no substantial evidence as to the victim's injury or medical treatment.  In support of this argument, Petitioner seems to be arguing that when his counsel gave him a copy of the state's discovery, there were no medical records in the file regarding the victim's injury. Petitioner appears to argue that this is exculpatory evidence that should have been turned over prior to trial.  Petitioner has failed in his burden to establish this claim.  Indeed, a review of the evidence establishes that at trial, the victim testified that one of the dogs bit him on the nose and lip almost tearing the front part of his mouth off, causing him to receive 11 - 14 stitches.  (Ex. 3

---

[11] Petitioner argues that the victim's parents attacked him and his wife eight days after Petitioner was arrested.  He claims that the prosecutor in the instant case dismissed those charges on the grounds of insufficiency of the evidence.  This Court notes that this "evidence" that the victim's parents attacked him does not support Petitioner's claim that the victim's father committed perjury when he testified that he had not spoken with petitioner about the assault. Not does it support a claim that the prosecutor suborned perjury.

to State's MSJ; Transcript at 16 -17.)  He further testified that the injury was painful, that he

received treatment at Cherokee Hospital, and took medication for the pain. (<u>Id</u>. at 18..)  The

victim's father testified that his son's face was swollen from the attack for about three to four

weeks, he received stitches, pain killers and antibiotics for the injury.  (<u>Id</u>. at 67-73.)  A Sheriff's

deputy who responded to the scene, testified that when he approached the victim, his lip was

swollen and he had blood all over his face and chest.  (<u>Id</u>. at 76.)  There was sufficient evidence

of serious injury and Petitioner's assertion that the prosecutor failed to disclose this lack of

evidence of the victim's injury is without merit.

The Court also notes that Petitioner raised the substance of his prosecutorial misconduct

claims in his first and/or second MAR which were summarily denied on their merits.  The

adjudications were correct and did not result in a decision contrary to, or involve an

unreasonable application of, clearly established federal law, as determined by the Supreme Court

of the United States, i.e. <u>Greer v. Miller</u>.  Nor were these MAR orders based on an unreasonable

determination of facts, in light of the evidence presented in the state court proceedings.

Therefore, Petitioner's prosecutorial misconduct claims are denied pursuant to § 2254(d) and (e).

See <u>Bell v. Cone</u>, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential

standard for evaluating state-court rulings, which demands theat state-court decisions be given

the benefit of the doubt.") (internal quotations marks and citation omitted), <u>Yarborough v.

Alvorada</u>, 541 U.S. 652 (2004) and <u>Early v. Packer</u>, 537 U.S. 3 (2002) (state court need not cite

or even be aware of United States Supreme Court cases in order to obtain deferential standards

of review)[12]

---

[12] To the extent that the undersigned is incorrect in concluding that Judge Downs
summarily denied Petitioner's prosecutorial misconduct claims on their merits, the only other

**H.      Newly Discovered Evidence**

Finally, Petitioner contends that newly discovered evidence was withheld by the state prosecutor in violation of his constitutional rights.  This is a repetition of his last prosecutorial misconduct claim wherein he argued that his attorney gave him a copy of the state's discovery which contained no medical records of the victim's injuries or medical treatment.   Petitioner argues that he just became aware of this lack of evidence and "the lack of the medical record that pertains to the alleged injury and medical treatments of the alleged victim and is a key element to the petitioner's charge of serious injury."  (Complaint at 18.)

As discussed in the prosecutorial misconduct section of this Order, there was sufficient evidence in the form of testimony that allowed the jury to conclude that the victim suffered serious injury. Petitioner's claim that the state withheld exculpatory evidence because its discovery file did not contain medical records is conclusory and without merit.

## V. ORDER

**THEREFORE IT IS HEREBY ORDERED** that

(1)      Petitioner's "Motion to Subpoena for Taking Deposition and to Appear as Petitioner's Witness at any Hearing Forthcoming in the Matters at Bar" (Doc. No. 11) is **DENIED**;

(2)      Respondent's Motion for Summary Judgment (Document No. 6) is **GRANTED;**

(3)      Petitioner's § 2254 Motion (Document No. 1) is **DENIED** and **DISMISSED**.

(4)      Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court

---

ground he could have denied them on would have been procedural bar as the claims were not raised on direct appeal.  If that is the case, such procedural bar would preclude federal habeas review.

declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

**SO ORDERED**.

Signed: May 13, 2010

Graham C. Mullen
United States District Judge